IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MIGUEL ANGEL DELGADO

        Plaintiff,

v.                                                      Civil Action No. 3:04-CV-29

EDWARD RUDLOFF, Administrator,
BENJAMIN SHREVE, LIEUTENANT,
COOK, 1st SERGEANT, and
EMPLOYEES AT ERJ,
        Defendants.

**REPORT AND RECOMMENDATION THAT DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT BE DENIED**

I. Introduction

The above named Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment on January 20, 2005.[1] *Pro Se* Plaintiff, Miguel Delgado, filed his response to Defendants' Motion for Summary Judgment on June 9, 2005.[2] Also, Plaintiff filed his Response to Defendants' Affirmative Defenses on June 9, 2005.[3]

A. Background

Plaintiff, is a former inmate of the Eastern Regional Jail (ERJ) in WV and a current inmate at Mount Olive Correctional Complex. Plaintiff filed a complaint under 42 U.S.C. § 1983 on March 31, 2004. Plaintiff alleges that Defendants violated his First and Fourteenth Amendment Rights by restricting his access to certain magazines i.e. STUFF, MAXIM, FHM, GQ, and KING. Plaintiff

---

[1] Docket No. 22.

[2] Docket No. 39.

[3] Docket No. 40.

requests that Defendants cease refusing and rejecting Plaintiff's publications, Defendants remove the outstanding ban on STUFF and MAXIM magazines and review each magazine on an issue by issue basis, Defendants remove the "perfume strips" off the contraband list, Defendants remove posters off the contraband list, Defendants make available to all inmates the written policies and procedures which govern inmate correspondence, Defendants define "offensive information, improper content, and contraband", Defendant cease refusing mail in large envelopes or envelopes larger than a #10 and mail arriving in plastic envelops, Defendants provide to all inmates minimal procedural safeguards in limiting or restricting inmates' mail, including notice to both inmates and the senders, without having to ask. Also, Plaintiff asks for $175,000 in punitive damages plus attorneys' fees and costs and such additional relief as the Court may deem just and proper.

## II. Defendants' Motion to Dismiss

A. <u>Discussion</u>

Defendants move to dismiss this action claiming that Plaintiff failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants' Memorandum fails to offer support for their Motion to Dismiss. Also, Plaintiff notes that the Undersigned recommended that Plaintiff's Complaint not be dismissed and that the District Court Judge adopted that recommendation. The report and recommendation which was an initial screening of the complaint under 28 U.S.C. § 1915(e) and 1915(A) set forth the case law that the applicable decisions of the United States Supreme Court clearly hold that the complaint states a claim upon which relief can be granted. Therefore, Defendants' Motion to Dismiss is DENIED.

## III. Defendants' Motion for Summary Judgment

A. <u>Discussion</u>

Defendants move for Summary Judgment pursuant to Fed. R. Civ. P. 56(b). Summary

Judgment is appropriate under Fed. R. Civ. P. 56 when no genuine issue of material fact exists and the moving parties are entitled to Summary Judgment as a matter of law. Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). All inferences must be drawn from the underling facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Plaintiff asserts that Defendants violated his First and Fourteenth Amendment Rights because they arbitrarily restricted his access to various media publications. Plaintiff filed his complaint based on 42 U.S.C. § 1983. In order to prevail on his claim, the Plaintiff must prove that 1) a person acting under the color of State law 2) committed an act which deprived him of an alleged right, privilege, or immunity protected by the Constitution or the laws of the United States. See 42 U.S.C. § 1983.

The United States Supreme Court has consistently recognized that the "[F]ederal Courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safely, 482 U.S. 78, 84 (1987). Moreover, the Court has stated that the "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Thornburgh V. Abbott, 490 U.S. 401, 407 (1989) (citing Turner, 482 U.S. at 84). Specifically relating to the case at bar, the Court has acknowledged that "[I]nmates clearly retain the right of free speech under the First and Fourteenth Amendments of the Constitution which includes the right to receive publications." Dixon v. Kirby, 210 F. Supp. 2d 792, 799 (S.D.W. Va. 2002) (Citing Thornburgh, 490 U.S. at 407). However, despite inmates possessing these rights, the Court has also "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between poisoners and the outside world." Thornburgh, 490 U.S. at 407 (citing Procunier v. Martinez, 416 U.S. 396, 404-05 (1974)). Thus, the court has held that prisoner regulations that

restrict or limit an inmates' constitutional rights are permissible if they are reasonable related to legitimate penological interests." Thornburgh, 490 U.S. at 409.

In order to determine if a prison regulation or policy is reasonably related to a legitimate penological interest, a court will apply the Turner test. Turner v. Safely, 482 U.S. 78 (1987). First, the court must determine whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it." Id. at 89. In particular, the governmental purpose must be legitimate and neutral, and without regard to the content of the expression. Id. Second, the court considers whether there are "alternative means of exercising the right that remain open to prison inmates." Id. Third, the court will weigh the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. However, if the "accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, [the court] should be particularly deferential to the informed discretion of correctional officials." Turner, 482 U.S. at 89. Finally, the court will evaluate if there are other "ready alternatives" available that would preserve the constitutional rights of the prisoner. Id. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

The Easter Regional Jail (ERJ) inmate handbook provides *inter alia*:

> Magazines, newspapers and periodicals sent to inmates must be mailed directly from the publisher. To be exchanged one for one and not to accumulate to excess. Any such material will not be permitted if it: a. contains instructions for the manufacture of explosives, drugs, or other unlawful substances; b. advocates violence in the jail; c. advocates racial, religious or national hatred in a manner as to create a serious danger of violence in the Facility; or d. encourages sexual behavior which is criminal and/or in Violation of facility rules. Packages are not permitted. Possessing any contraband. Contraband shall include any item or substance not specifically permitted to inmate property by institutional rules or any altered permissible item or excess of permissible items.

>Contraband shall also include any permissible item not be used for its original intent.

The ERJ's above stated policy is reasonably related to a legitimate penological interest. The ERJ's policy is aimed at restricting information to prisoners that might lead to violence, hatred and criminal behavior. If prisoners were in possession of material which provided instructions for the manufacture of explosives, drugs, or other unlawful substances; advocated violence in the jail; advocated racial, religious or national hatred in a manner as to create a serious danger of violence in the Facility; or encouraged sexual behavior; the safety of the staff, other inmates and the general public would be jeopardized. The ERJ's policy is neutral and without regard to the content of the expression. Therefore, there is a valid, rational connection between the ERJ's regulation and the legitimate governmental interest put forth to justify it. This meets the first step of the Turner test. In the second step of Turner the court has to consider whether there are "alternative means of exercising the right that remain open to prison inmates." Id. Plaintiff does not offer alternative means of exercising prisoner's right to receive publications. There are no other ways for prisoners to exercise the right to receive publications without the above stated limitations. No ready alternatives were provided to this Court that would preserve the Constitutional rights of the prisoner. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. Therefore, the EJF's above stated policy is reasonably related to a legitimate penological interest.

Issue of Material Fact

Plaintiff alleges that his rights were violated when Defendants confiscated from his cell a Maxim Magazine which contained an article entitled "How to Escape from Restraints" and a Stuff Magazine with an article entitled "The World's Wildest Prison Escapes". Plaintiff further alleges that he was allowed to keep the actual articles but not the rest of the magazine. Plaintiff further maintains that all Stuff and Maxim magazines were banned from entering the ERJ. Defendants in

their Motion to Dismiss or in the Alternative For Summary Judgment state that Plaintiff was not prohibited from received all issues of Mamix, Stuff or other magazines. That is an issue of material fact. Therefore, Summary Judgment is not appropriate here. <u>Celotex Corp. v. Cartrett</u>, 477 U.S. 317, 325 (1986).

Plaintiff argues that the Defendants do not follow their own policy. Defendants' Policy and Procedures regarding mail states that "contraband found will be removed" from incoming mail and that "when it is deemed necessary to remove any item from incoming mail, a written record shall be made of such action". Plaintiff maintains that the ERJ does not follow its own policy of removing contraband for example removing a DVD/CD from a magazine and providing the magazine to the prisoner, and instead the ERJ does not deliver the magazine to the prisoner. Also, Plaintiff maintains that the ERJ does not keep a written record of such action. Plaintiff notes that the ERJ has a policy that states "Notice shall be sent to the inmate and the sender of contraband found which is not otherwise illegal" and argues that the ERJ does not follow that policy and that neither he or the sender were notified when a magazine was rejected. Plaintiff also maintains that perfume strips are not contraband. Defendants maintain that perfume strips are contraband. These are issues of material fact. These issues cannot be resolved as a matter of law. Therefore, Summary Judgment is denied. <u>Celotex Corp. v. Cartrett</u>, 477 U.S. 317, 325 (1986).

<u>Recommendation</u>

Plaintiff's compliant stated a claim upon which relief can be granted, therefore, it is recommended that Defendants' Motion to Dismiss be DENIED. Genuine issues of material fact exist, therefore, it is recommended that Defendants' Motion for Summary Judgment is DENIED.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the

Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: July 26, 2005

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE